David Kusnetz, J.
This is an action to compel the defendant to execute and deliver an assignment of her late husband’s interest in a patent for a hand operated rocket type device for signalling and other purposes. The plaintiff, a Delaware corporation, is engaged in the development, manufacture and sale of military pyrotechnics. The defendant is the sole beneficiary and executrix under the last will and testament of Ralph Anzalone, who died on February 26, 1949.
The deceased was employed by the plaintiff under a contract of employment dated July 29,1942 ‘ ‘ in the capacity of Assistant Vice-President to continue experimental research and development work under the direction of the President (Martin Dwyer) and to perform such other duties as may be assigned him by the President, for a term of two years commencing as of January 14, 1942 ’ ’. This contract provided for its extension ‘ ‘ for an additional term or terms by supplemental agreements between the parties.” The deceased expressly agreed in said contract “ that all of the results of his experiments, research, development and discoveries, and all inventions or improvements to existing inventions * * * (by him), during the term of this contract shall be the property of ” the plaintiff, and that he would ‘ ‘ devote his entire time, attention and energy to the performance of his duties * * * serve diligently and to the best of his ability in all respects ”. It was also agreed that the deceased “ shall not engage in any other business directly or indirectly during the term of this contract without the prior written consent ” of the plaintiff which agreed not to withhold such consent unreasonably. It was stipulated on the record that the plaintiff duly performed all the covenants and conditions of said contract on its part to be performed.
*351 At the same time that the parties entered into the foregoing employment contract, they entered into a separate contract, dated July 29, 1942, pursuant to which the deceased assigned to the plaintiff for valuable consideration ‘ his entire right, title and interest in and to a certain new and useful improvements in Rocket construction ’ ’ which he had invented and for which he had filed on January 21, 1941, an “ application for Letters Patent of the United States.” The assignment of this application for a patent expressly included ‘ any other Letters Patent that may hereafter be granted to or owned by” the deceased, ‘ ‘ for any invention or improvement in Rocket construction.” This agreement provided for the execution and delivery to the plaintiff by the deceased of “ a formal assignment of his entire interest in said invention and in said application for Letters Patent ”. The agreement also provided that it “ shall apply to and bind the parties hereto, their successors and assigns forever.”
Thereafter, the deceased, in accordance with the preceding contract of July 29,1942, executed and delivered to the plaintiff an instrument dated March 2, 1943, wherein he formally assigned and transferred to the plaintiff his ‘ ‘ entire right, title and interest in and to the said invention, * * * and also in and to all improvements thereof and further developments thereon which have been or will be made, and in and to any Letters Patent of the United States of America and foreign countries and any and all applications therefor that may be granted therefor, together with the right to extend the protection thereof to the various territorial possessions now owned or which may hereafter be acquired by the United States of America and foreign countries ’ ’. The deceased further agreed in said formal assignment that “ without demanding any further consideration therefor,” he would “ at the request but at the expense of the ” plaintiff as assignee “ do all lawful and just acts, including the execution and acknowledgment of affidavits and oaths, foreign, divisional, continuation, reissue and substitute applications and any other instruments that may in the opinion of Assignee be or become necessary for any purpose or for obtaining, sustaining, or reissuing United States Letters Patent for the said inventions, improvements or developments and for maintaining and protecting the Assignee’s right to said inventions, improvements or developments and Letters Patent ”.
On March 26, 1946, the application for letters patent thus assigned, was granted, and United States Patent No. 2,397,114 was duly issued to the plaintiff. This patent will, for convenience, be hereinafter referred to as Patent One.
*352 On July 10, 1947, the deceased and Martin Dwyer, the plaintiff’s president, who on its behalf had executed the two contracts dated July 29, 1942, filed an application for a United States patent to the “ Hand Operated Rocket-Type Device For Signalling and Other Purposes ” which application duly matured on August 15, .1950 into United States Letters Patent No. 2,510,123, which is the subject matter of this action and will, for convenience, hereinafter be referred to as Patent Two.
It was conceded on the record that all expenses incurred in the issuance of Patent One, and the application for, prosecution and issuance of Patent Two were paid by the plaintiff. While Martin Dwyer, the president of the plaintiff, has duly assigned to it all his right, title and interest in and to Patent Two, defendant has refused to execute an assignment of the deceased’s interest therein although duly demanded. Thereupon this litigation ensued.
Plaintiff’s amended complaint seeks judgment on four theories embodied in as many causes of action. The first is premised upon the claim that the invention illustrated, described and claimed in Patent Two is but an improvement of that illustrated, described and claimed in Patent One which improvement was equitably conveyed to the plaintiff under the terms of the contract of assignment dated July 29, 1942, and the subsequent formal assignment of March 2, 1943.
The second cause of action is bottomed upon the premise that Patent Two was an invention in Rocket construction that the deceased conveyed to the plaintiff in the contract of assignment dated July 29, 1942, which embraced not only Patent One but “ any other Letters Patent that may hereafter be granted to or owned by ” the deceased “ for any invention or improvement in Rocket construction.”
The theory of the third cause of action is that Patent Two was an improvement of and development in the field of Rocket construction which the deceased conveyed to the plaintiff both by the contract of assignment of July 29, 1942 and the formal assignment of March 2,1943.
In its fourth and last cause of action, plaintiff contends that the nature and circumstances of the deceased’s employment, coupled with his assignment to work on Patent Two entitle it to the fruits of his labors.
While conceding that plaintiff has shop rights to the invention described in Patent Two, the defendant contends that it acquired no title thereto and therefore is not entitled to relief on the basis of any of the four causes of action alleged in the amended complaint. The invention which is the subject of this *353 action, she urges in substance, was solely a launching device for Rockets and a method of packaging them and not an improvement of the Rocket itself, or, a development in the field of Rocket construction.
It is indeed true that an employee, who ‘ during his hours of employment, working with his master’s materials and appliances, conceives and perfects a patent, he must accord his master a nonexclusive right to practice the invention.” (United, States v. Dubilier Condenser Corp., 289 U. S. 178, 188.) Such a right is known as a “ shop-right ” and “the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer had no part.” (P. 189.) This limited right accrues, however, when the conception is devised by the patentee ‘ ‘ without suggestion, instruction, or assignment from any superior” (p. 185). Thus, “if the employment be general, albeit it cover a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent.” (P. 187.)
Here, the deceased was employed in the capacity of assistant vice-president “ to continue experimental research and development work under the direction of the President ” in whose joint name Patent Two was subsequently applied for and issued, and the deceased agreed “ that all of the results of his experiments, research, development and discoveries, and all inventions or improvements to existing inventions,” by him, “ during the term of this contract shall be the property of ” the plaintiff, his employer.
The two-year term of this contract of employment, argues the defendant, could be extended only in the manner therein provided — “by supplemental agreements between the parties”— of which there was no proof; and, in any event, at the time that the hand-held rocket, described in Patent Two, was conceived, Anzalone was employed generally as assistant vice-president of the corporation and not specifically to make or develop this or any other particular invention.
While no written supplemental agreements were ever executed, it is clear that Anzalone continued in plaintiff’s employ until the time of his death performing experimental, research and development work under the direction of president Martin Dwyer on products manufactured by the plaintiff, precisely as contemplated by the original contract of employment, except for salary which, from time to time, was substantially increased. In his laboratory housed in a small old building on the plain *354 tiff’s grounds, Anzalone was assisted by an employee of the plaintiff, and he was supplied with all materials and parts necessary to perform the experimental work on the particular project to which, for the time being, he was assigned by the president. Although an assistant vice-president of the corporation, he had no executive or supervisory duties of any kind nor was he concerned with any other department of the plant — production, personnel or traffic — all supervised by others. However, gifted in the field of fireworks, his practical advice was sought and given when trouble was encountered in the plant with powder or pyrotechnics used in the flares and rockets manufactured by the plaintiff for military purposes and when difficulties arose in naval installations with the pistol-rocket described in Patent One.
The hand-held rocket described in Patent Two was not a conception of Anzalone’s independent of his duties with the plaintiff. Indeed, the idea of such a rocket was conceived by Martin Dwyer, the president of the plaintiff. He, himself, owned a patent to a small hand-held orange smoke signal which the plaintiff had developed. Naval authorities had informed him that something better than the pistol-rocket had to be devised if plaintiff were to receive further orders. The pistol-like assembly necessary to launch the rocket, described in Patent One, weighed some eight and one-half pounds, and the rocket was useless without it. In addition, the rocket itself needed improvement and had to be reduced in size to render it competitive with the seven-inch roman candle hand signal the British had. Accordingly, in July, 1944, he instructed Anzalone and his department to develop improvements not only in the rocket itself, but to transmute into practical application his idea of a hand-activated rocket that required no separate device to discharge it. When such a rocket was developed by 1947, the patent law firm, under retainer by plaintiff, did all the work in obtaining Patent Two, the application for which was signed both by Dwyer and Anzalone and indorsed by plaintiff’s said attorneys.
It is clear from all of the foregoing that the conception of the hand-held rocket, described in Patent Two, was not Anzalone’s alone in which his superior and employer had no part. Bather, the idea was Mr. Dwyer’s, the president of the plaintiff, under whose direction the contract of employment required Anzalone “ to continue experimental research and development work.” The problem of developing and translating that idea into practical use was assigned to Anzalone, who, under the direction of his superior and at the expense of the plain *355 tiff, devoted his efforts towards its solution until it culminated in the application for Letters Patent signed by Dwyer and Anzalone as coinventors, and the maturing thereof into Patent Two, subsequent to Anzalone’s death. Under these circumstances this patent belong to the plaintiff. Unlike the situation in United States v. Dubilier Condenser Corp. (supra, p. 185), the project of improving the existing rocket and eliminating the separate expensive and cumbersome pistol-like firing mechanism, was involved in and suggested by the problem with which the plaintiff was then dealing and which was assigned by a superior, Martin Dwyer, plaintiff’s president, as a task to be solved by Anzalone and the research and development laboratory, of which he had charge. (Standard Parts Co. v. Peck, 264 U. S. 52; Houghton v. United States, 23 F. 2d 386, 390, cert, denied 277 U. S. 592.)
Moreover, in his contract of assignment, dated July 29, 1942, Anzalone assigned to the plaintiff “ any other Letter Patent that may hereafter be granted to or owned by ” him “ for any invention or improvement in Rocket construction,” and in the formal assignment itself, dated March 2, 1943, he assigned not only the rocket construction described in Patent One, but also “ all improvements thereof and further developments thereon which have been or will be made ” and agreed to execute on request, but at plaintiff’s expense, all instruments “ that may in the opinion of Assignee be or become necessary for any purpose or for obtaining, sustaining, or reissuing United States Letters Patent for the said inventions, improvements or developments ”.
The second rocket is smaller and has better life characteristics than the first; it employs all metal structural parts, whereas the first uses cardboard and clay for that purpose. The second rocket does not require a separate pistol-like mechanism to launch it. It carries its own firing device, simply the cap of the rocket container itself which has a sharp conical projection on the inside of its base. This cap is removed and inserted over the base of the rocket which is launched when the base of the cap is struck a sharp blow with the hand. The principle for launching both rockets is the same — the ignition of the primer through mean's of a firing pin. The difference lies in the manner in which the primer is ignited. The first rocket is inserted into the separate pistol-like assembly; the cap of the second, with a firing pin attached, is inserted over the base of the rocket itself. A blow of the hammer of the pistol-like assembly culminates in the ignition of the primer of the first rocket; a blow of the hand on the base of the cap with the coni *356 cal firing pin inside achieves the same result in the second rocket. The court finds upon all the evidence that the second rocket was not a new invention; rather, it was an improvement of the first, and a further development in the field of rocket construction.
Judgment is accordingly granted in favor of the plaintiff on the merits for the relief demanded in the amended complaint. All motions, upon which decision was reserved at the trial, are denied with appropriate exceptions. Findings of fact have been waived by the parties.
This memorandum constitutes the decision of the court, pursuant to section 440 of the Civil Practice Act.
Settle judgment on five days’ notice.